Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| OFICINA DE ÉTICA GUBERNAMENTAL<br><br>Parte Recurrida<br><br>v.<br><br>ALEXIS A. BERRÍOS MARRERO<br><br>Parte Recurrente | TA2025RA00048 | *Revisión Decisión Administrativa procedente de la Oficina de Ética Gubernamental*<br><br>Caso núm.: 23-49<br><br>Sobre:<br>Violación al Artículo 4.2, Incisos (b), (j), (k), (l) y (m) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley Núm. 1-2012, según enmendada. |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Robles Adorno.[1]

Robles Adorno, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 9 de diciembre de 2025.

El 3 de julio de 2025, el señor Alexis A. Berríos Marrero (señor Berríos Marrero o recurrente) presentó ante nos una *Revisión Administrativa* en la que solicitó que revoquemos la *Resolución*, notificada el 4 de junio de 2025 por la Oficina de Ética Gubernamental (OEG o la parte recurrida). En el aludido dictamen, la OEG determinó que el señor Berríos Marrero violentó el Artículo 4.2, incisos (b), (k) y (m) de la *Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico*, Ley Núm. 1 de 3 de enero de 2012, según enmendada, 3 LPRA sec. 1857a (Ley de Ética Gubernamental), y le impuso una multa global de $15,000.00.[2]

---

[1] Véase OATA-2025-170 del 3 de septiembre de 2025 en la que se designa al Juez Robles Adorno en sustitución del Juez Rodríguez Flores.
[2] Entrada Núm. 26 del caso TA2025RA00048 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), Apéndice 1, págs. 1-18.

Tras varios incidentes procesales, el 25 de septiembre de 2025, el recurrente presentó una *Revisión Administrativa Enmendada* solicitando nuestra revisión del referido dictamen.

Por los fundamentos que exponemos a continuación, revocamos la *Resolución* recurrida.

**I.**

El caso de autos inició el 25 de abril de 2023, cuando la parte recurrida presentó una *Querella* en contra del señor Berríos Marrero.[3] En síntesis, la OEG alegó que el 12 de agosto de 2022, el recurrente, mientras fungía como Ayudante Especial II o *Chief of Staff* en la Comisión de Juegos de Puerto Rico, y en horas laborables, se comunicó con el señor Jorge Castro González (el señor Castro González), Director auxiliar de fiscalización bajo la supervisión inmediata del recurrente en la Comisión, con el propósito de venderle una taquilla para una actividad político-partidista organizada por el Partido Nuevo Progresista (PNP).

A raíz de ello, el señor Castro González, quien, según surge de la *Querella*, se sintió compelido, y envió $50.00 a través de la aplicación ATH Móvil. Asimismo, el 16 de agosto de 2022, el señor Castro González acudió a la oficina del recurrente, en donde este le entregó la referida taquilla.

Siendo así, la OEG le imputó al señor Berríos Marrero la violación de los incisos (b), (j), (k), (l) y (m) del Artículo 4.2 de la Ley de Ética Gubernamental, los cuales prohíben, esencialmente, que un servidor público, en el ejercicio de sus funciones, utiliza las mismas y propiedad pública, para promover una actividad político-partidista y requerirle a otro servidor público una aportación y participación en un actividad político-partidista.

---

[3] Entrada Núm. 26 del caso TA2025RA00048 en el SUMAC, Apéndice 2, págs. 417-421.

El 5 de junio de 2023, el recurrente presentó una *Contestación a la Querella*.[4] En síntesis, negó, en su mayoría, las imputaciones hechas en su contra y adujo que la queja era producto de represalias en su contra por haber cooperado en investigaciones realizadas por la OEG, la Asamblea Legislativa, el Contralor de Puerto Rico y la Oficina del Inspector General, en adición a que las alegaciones del señor Castro González se debían a una retaliación por habérsele notificado que sería removido de su puesto de confianza.

Ese mismo día, el recurrente interpuso una *Moción Informativa* en la que informó el envío de un pliego de interrogatorios y producción de documentos, y un aviso de toma de deposición al señor Castro González.[5] El 28 de junio de 2023, la OEG le notificó al señor Berríos Marrero una *Contestación a Primer Pliego de Interrogatorio y Producción Documentos*.[6]

El 28 de agosto de 2023, el recurrente presentó una *Moción Solicitando Orden Sobre el Descubrimiento de Prueba para Evitar Violaciones del Derecho Constitucional al Debido Proceso de Ley de la Parte Querellada*.[7] Allí, señaló que la recurrida se negó a proveer evidencia pertinente y exculpatoria. En específico, sostuvo que la OEG se negaba a contestar si el señor Castro González, el único testigo sobre los hechos imputados, era o había sido objeto de investigación de la referida agencia por tratarse de información confidencial. El recurrente indicó que dicha información versaba sobre las motivaciones personales del señor Castro González, lo cual era pertinente a su interés de demostrar que las alegaciones de éste se debían a represalias.

Asimismo, especificó que no solicitaba conocer los detalles ni el contenido de la información que requería, sino que si el señor

---

[4] Entrada Núm. 26 del caso TA2025RA00048 en el SUMAC, Apéndice 2, págs. 436-438.
[5] *Íd.*, págs. 434-435.
[6] *Íd.*, págs. 102-120.
[7] *Íd.*, págs. 367-372.

Castro González fue o estaba siendo investigado, si cooperó en contra del señor Berríos Marrero como parte de dicha investigación, si había comparecido a las oficinas de la OEG y cuándo. De igual forma, arguyó que la agencia podía tomar medidas protectoras para salvaguardar cualquier riesgo de afectar la confidencialidad alegada por la OEG.

El 6 de septiembre de 2023, la recurrida presentó una *Oposición a Moción Sobre Descubrimiento de Prueba de la Parte Querellada*.[8] Particularmente, enfatizó que la información que solicitaba la recurrente era de naturaleza confidencial por disposición de ley. Específicamente, sostuvo que la Ley de Ética Gubernamental prohíbe que cualquier persona revele información sobre las investigaciones que realiza la OEG salvo que su Director Ejecutivo así lo autorice. Asimismo, rechazó la contención del señor Berríos Marrero y razonó que es la propia agencia quien presenta las querellas luego de realizar las investigaciones imparciales correspondientes, lo cual depura cualquier motivación que tuvieren los promoventes. Igualmente, indicó que el recurrente no figuraba como promovente de la investigación sobre el señor Castro González, y una alegada represalia suponía que la agencia reveló su nombre como testigo o promovente.

Ante ello, el 22 de septiembre de 2023, el señor Berríos Marrero presentó una *Réplica a la Oposición a Moción Sobre Descubrimiento de Prueba de la Parte Querellada y Solicitud de Celebración de Vista Argumentativa* en la que reiteró los planteamientos ya expuestos.[9]

Trabada la controversia, el 3 de octubre de 2023, notificada el 4 de octubre de 2023, la Oficial Examinadora a cargo del caso emitió

---

[8] Entrada Núm. 26 del caso TA2025RA00048 en el SUMAC, Apéndice 2, págs. 342-347.
[9] *Íd.*, págs. 313-329.

una *Orden* mediante la cual refirió el asunto al Director Ejecutivo de la OEG para ser resuelto.[10]

Siendo así, el 30 de octubre de 2023, notificada el 31 de octubre de 2023, el Director Ejecutivo de la OEG emitió una *Orden Interlocutoria*.[11] En síntesis, denegó la solicitud del recurrente tras determinar que la información estaba salvaguardada por la confidencialidad de las investigaciones establecida en la Ley de Ética Gubernamental, y por constituir información oficial privilegiada, protegida por la Regla 514 de Evidencia, 32 LPRA Ap. VI, así como producto del trabajo del abogado, protegido por la Regla 505 (A) (2) de Evidencia, *supra*, toda vez que los expedientes investigativos de la OEG contienen las impresiones mentales de los abogados investigadores.

Inconforme, el 10 de noviembre de 2023, el recurrente interpuso una *Reconsideración a Orden Interlocutoria*.[12] Allí, solicitó la imposición de órdenes protectoras para salvaguardar la confidencialidad de la información solicitada, la aplicación de la presunción sobre evidencia adversa por haber sido voluntariamente suprimida, o la desestimación de la *Querella* hasta tanto culminara cualquier investigación en contra del señor Castro González. Así las cosas, el 15 de noviembre de 2023, notificada el 17 de noviembre de 2023, el Director Ejecutivo de la OEG emitió una *Orden Interlocutoria* en la que denegó el petitorio de reconsideración.[13]

Tras varios incidentes procesales, el 21 de marzo de 2024, el señor Berríos Marrero presentó una *Moción Solicitando Desestimación*.[14] En lo pertinente, señaló que la OEG radicó la *Querella* de epígrafe sin culminar el proceso de investigación. Sobre

---

[10] Entrada Núm. 26 del caso TA2025RA00048 en el SUMAC, Apéndice 2, págs. 310-312.
[11] *Íd.*, págs. 293-299.
[12] *Íd.*, págs. 272-284.
[13] *Íd.*, págs. 269-271.
[14] Entrada Núm. 26 del caso TA2025RA00048 en el SUMAC, Apéndice 2, págs. 212, 214-222.

ello, especificó que advino en conocimiento de que la recurrida entrevistó a personas adicionales a las que había indicado durante el descubrimiento de evidencia. Igualmente, reiteró los planteamientos esbozados sobre la denegatoria de la recurrida de descubrir la información sobre los alegados procedimientos en contra del señor Castro González, lo cual sostuvo que constituía prueba exculpatoria. Siendo así, solicitó a la OEG que celebrara una vista argumentativa y desestimara la *Querella*.

El 8 de abril de 2024, la OEG presentó una *Moción en Oposición a Solicitud de Desestimación*.[15] Resaltó que, lo referente a la información solicitada en la etapa de descubrimiento de prueba ya había sido resuelta e indicó que la omisión de una de las tres (3) personas que fueron contactadas había sido subsanada mediante una contestación enmendada a un interrogatorio y, en cuanto a las restantes, carecía del elemento de sorpresa y no incidían sobre las imputaciones hechas en contra del recurrente. Asimismo, señaló que ninguna de ellas aportaba a prueba exculpatoria y que nada impedía que la OEG realizara gestiones adicionales con relación a las alegaciones luego de radicada la *Querella*, siempre y cuando no resulte sorpresivo para el señor Berríos Marrero.

El 21 de mayo de 2024, la Oficial Examinadora emitió y notificó una *Orden* mediante la cual denegó la solicitud de desestimación.[16]

Así las cosas, la vista en su fondo ante la Oficial Examinadora fue celebrada los días 9, 10 y 11 de julio de 2024. Asimismo, el 7 de abril de 2025, se rindió el *Informe de la Oficial Examinadora*.[17] A través de este, la Oficial Examinadora recomendó al Director Ejecutivo de la OEG que encontrara al recurrente incurso en violación de los incisos (b), (k) y (m) del Artículo 4.2 de la Ley de

---

[15] *Íd.*, págs. 196-205.
[16] *Íd.*, págs. 168-171.
[17] *Íd.,* Apéndice 1, págs. 5-18.

Ética Gubernamental, *supra,* y le impusiera una multa de conformidad a la discreción provista por el inciso (c) del Artículo 4.7 del referido estatuto. Asimismo, la Oficial Examinadora recomendó el archivo de la imputación a la violación de los incisos (j) y (l) del Artículo 4.2 de la referida ley.

El 30 de mayo de 2025, notificada el 4 de junio de 2025, el Director Ejecutivo de la OEG emitió la *Resolución* recurrida.[18] Mediante el aludido dictamen, se acogió en su totalidad la recomendación hecha por la Oficial Examinadora y, de conformidad, se le impuso una multa de $5,000.00 al recurrente por cada una de las infracciones a los incisos (b), (k) y (m) del Artículo 4.2 de la Ley de Ética Gubernamental, *supra,* para una suma total de $15,000.00.

Inconforme, el 3 de julio de 2025, el señor Berríos Marrero presentó una *Revisión Administrativa,* la cual fue enmendada, tras varios incidentes procesales, y señala a la recurrida por la comisión de los siguientes errores:

> Primer error: Erró el Director de la OEG al emitir una Resolución final del caso 23-49 luego de transcurridos 291 días desde que el caso quedó sometido para adjudicación final, en crasa violación al término de 90 días y a las disposiciones aplicables establecidas en la Sección 3.14 de la Ley 38-2017, según enmendada, conocida como la "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico" y en violación al Artículo 6.15 del Reglamento sobre Asuntos Programáticos de la Oficina de Ética Gubernamental de Puerto Rico.
>
> Segundo error: Erró el Director de la OEG al adoptar en su totalidad el Informe de la Oficial Examinadora y emitir Resolución en la cual no se desestimó la querella presentada por la OEG a pesar de ésta adolecer del insubsanable defecto de que la investigación cursada por la OEG no cumplió con los términos prescriptivos establecidos en el Artículo 7.1 de la Ley 1-2012.
>
> Tercer error: Erró el Director de la OEG al adoptar en su totalidad el Informe de la Oficial Examinadora y determinar mediante Resolución que la parte recurrente incurrió en violaciones de los incisos (b), (k) y (m) del Artículo 4.2 de la Ley 1-2012, según

---

[18] Entrada Núm. 26 del caso TA2025RA00048 en el SUMAC, Apéndice 1, págs. 1-4.

enmendada, conocida como la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico cuando la prueba desfilada en la vista en su fondo no cumplió con el quantum vigente de prueba clara, robusta y convincente, máxime cuando la propia recurrida certificó el expediente adjudicativo como copia fiel y exacta del original, el cual no contenía la prueba documental presentada durante la vista adjudicativa, conforme lo requiere la Sección 3.18 de la LPAU, tal como ha resuelto y reiterado nuestro Honorable Tribunal Supremo.

Cuarto error: Erró el Director de la OEG al adoptar en su totalidad el Informe de la Oficial Examinadora y emitir Resolución, en la cual brinda total y entera credibilidad al testimonio del testigo mendaz Jorge Castro González, a la vez que la OEG rehusó descubrir y entregar al recurrente evidencia pertinente a la mendacidad de Castro González y sus motivos para presentar el planteamiento ante la OEG en contra del recurrente, manteniendo inalterada la orden interlocutoria emitida el 21 de mayo de 2024 que declaró No Ha Lugar la Moción de Desestimación del recurrente, para luego de emitido el Informe de la Oficial Examinadora el 7 de abril de 2025, presentar el 12 de mayo de 2025 la querella número 25-64 en contra de su propio y principal testigo Jorge Castro González imputándole haber violado en al menos diez (10) ocasiones el Artículo 4.6 (b) de la Ley 1-2012, información que la OEG le ocultó a la Oficial Examinadora y al recurrente durante todo el proceso administrativo en crasa violación al debido proceso de ley y sus derechos constitucionales.

Quinto error: Erró el Director de la Oficina de Ética Gubernamental al emitir Resolución y adoptar en su totalidad el Informe de la Oficial Examinadora el cual estuvo viciado por la crasa violación al debido proceso de ley no permitir al recurrente presentar prueba a su favor sobre la parcialidad en su contra de la investigación cursada por la OEG.

Sexto error: Erró el Director de la OEG al adoptar en su totalidad el Informe de la Oficial Examinadora y emitir Resolución basada en dicho informe, el cual adolece del grave defecto de haber excluido, descartado y omitido el testimonio del Lcdo. Nino Rivera, Subdirector del Área de Investigaciones y Procesamiento Administrativo de la OEG, y quien fue el principal testigo del recurrente, ignorando y excluyendo de esta manera los hechos probados con su testimonio bajo juramento, en crasa violación al debido proceso de ley y sus derechos constitucionales del recurrente.

Séptimo error: Erró el Director de la Oficina de Ética Gubernamental al adoptar en su totalidad el Informe de la Oficial Examinadora y emitir Resolución basada en dicho informe, el cual está plagado de inferencias y conjeturas del foro administrativo lo cual va en violación al requisito del quantum de prueba que tiene que considerar la OEG, que es el de prueba clara, robusta y

convincente conforme lo que ha resuelto y reiterado nuestro Honorable Tribunal Supremo.

El 10 de septiembre de 2025, ambas partes presentaron una *Moción Informativa Conjunta Sometiendo Transcripción de la Prueba Oral Estipulada Entre Las Partes*.[19]

Por su parte, el 27 de octubre de 2025, la recurrida presentó su *Alegato en Oposición a Revisión Administrativa Enmendada*.[20]

Con el beneficio de la comparecencia de ambas partes, la totalidad del expediente y la transcripción oral de la vista administrativa, procedemos a disponer del asunto ante nuestra consideración, no sin antes delimitar la normativa jurídica aplicable.

## II.

### A.

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38 de 2017, según enmendada, 3 LPRA secs. 9601 et seq., (LPAU) establece el alcance de la revisión judicial de las determinaciones de las agencias administrativas. A tenor de esta y la jurisprudencia aplicable, la revisión judicial consiste, esencialmente, en determinar si la actuación de la agencia se dio dentro de las facultades que le fueron conferidas por ley, si es compatible con la política pública que la origina y si es legal y razonable. *Capó Cruz v. Junta de Planificación*, 204 DPR 581, 590-591 (2020). La Revisión Judicial es aplicable a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias o funcionarios administrativos que serán revisadas por el Tribunal de Apelaciones. *Íd.* 3 LPRA sec. 9671. La Revisión Judicial de determinaciones administrativas responde principalmente a delimitar la discreción de las agencias y velar que ejerzan sus funciones conforme a la ley. *Mun. de San Juan v. J.C.A.*, 149 DPR 263, 279 (1999); *Edward Simpson v. Consejo de Titulares y Junta de*

---

[19] Entrada Núm. 20 del caso TA2025RA00048 en el SUMAC.
[20] Entrada Núm. 31 del caso TA2025RA00048 en el SUMAC.

*Directores del Condominio Coral Beach*, 214 DPR 370 (2024). La intervención judicial se rige por los parámetros establecidos en la LPAU. *Edward Simpson v. Consejo de Titulares y Junta de Directores del Condominio Coral Beach, supra.* Asimismo, la sección 4.2 de la LPAU establece que,

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración.

*Íd.* 3 LPRA sec. 9672.

El mecanismo de revisión judicial se extiende a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por las agencias o funcionarios administrativos. *Edward Simpson v. Consejo de Titulares y Junta de Directores del Condominio Coral Beach, supra,* pág. 378. La LPAU no define lo que es una orden o resolución final pero, el Tribunal Supremo ha definido una orden o resolución final como "las decisiones que ponen fin al caso ante la agencia y que tienen efectos sustanciales sobre las partes". *J. Exam Tec. Med. v. Elías et al.*, 144 DPR 483, 490 (1997). La orden o resolución final, resuelve todas las controversias pendientes ante la agencia y da finalidad al proceso administrativo. *Edward Simpson v. Consejo de Titulares y Junta de Directores del Condominio Coral Beach, supra,* pág. 378 (citando a *Miranda Corrada v. DDEC et al.*, 211 DPR 738, 741–742 (2023)); *Fonte Elizondo v. F & R Const.*, 196 DPR 353, 358 (2016); *ARPe v. Coordinadora*, 165 DPR 850, 867 (2005); *Crespo Claudio v. OEG*, 173 DPR 804, 813 (2008); *Comisionado Seguros v. Universal*, 167 DPR 21, 28 (2006). Las decisiones administrativas que no cumplan ese criterio no son

revisables judicialmente. *Edward Simpson v. Consejo de Titulares y Junta de Directores del Condominio Coral Beach, supra*, pág. 378.

**B.**

Los organismos administrativos merecen la mayor deferencia posible de los tribunales. *Otero v. Toyota*, 163 DPR 716, 727 (2005). Tal deferencia se apoya en que las agencias administrativas tienen conocimiento experto y la experiencia especializada de los asuntos que le son encomendados. *Otero v. Toyota, supra*, pág. 728. Un principio establecido es que las determinaciones de las agencias administrativas tienen una presunción de legalidad y corrección en la que no deben intervenir los tribunales. *Rebollo v. Yiyi Motors*, 161 DPR 69, 78 (2004). Las determinaciones de hecho de las agencias tienen a su favor una "presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas." *Henríquez v. Consejo Educación Superior,* 120 DPR 194, 210 (1987). Nuestro Tribunal Supremo ha expresado que los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo "si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad." *Otero v. Toyota, supra*, págs. 727-728; *Domingo v. Caguas Expressway Motors*, 148 DPR 387, 397 (1999). Las determinaciones de hecho serán sostenidas por el tribunal, si se basan en evidencia sustancial que no obra en el expediente administrativo. *Vázquez v. Consejo de Titulares*, 216 DPR ___ (2025), 2025 TSPR 56. Ejercitando un criterio de razonabilidad y deferencia, los tribunales no deben intervenir o alterar las determinaciones de hecho realizadas por una agencia si están sostenidas por evidencia sustancial que surge del expediente. *Otero v. Toyota, supra*, pág. 728. El Máximo Foro judicial ha definido evidencia sustancial como aquella "que una mente razonable podría aceptar como adecuada

para sostener una conclusión." *Íd.*; *Ramírez v. Depto. de Salud*, 147 DPR 901, 905 (1999). La parte que impugne una determinación de hecho de una agencia debe convencer al foro apelativo que la determinación de hecho no fue basada en evidencia sustancial. *Otero v. Toyota, supra*, pág. 728. Para rebatir la determinación que cuestiona, debe demostrar que existe otra evidencia en el expediente que reduzca el valor probatorio. *Íd.* Si la parte no demuestra en la revisión judicial otra evidencia sustancial que sostenga la determinación de la agencia, entonces no alterará la determinación de la agencia. *Íd.*

La parte que alegue ausencia de evidencia sustancial debe demostrar que existe:

> [O]tra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial . . . hasta el punto de que se demuestre claramente que la decisión del organismo administrativo no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración.
>
> *Metropolitan SE v. ARPe*, 138 DPR 200, 213 (1995) (citando a *Hilton Hotels v. Junta de Salario Mínimo*, 74 DPR 670, 686 (1983)) (cita depurada).

Por otro lado, respecto a las conclusiones de derecho, la LPAU señala que éstas pueden ser revisadas en todos sus aspectos. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Las conclusiones de derecho serán revisables en todos sus aspectos por un tribunal. *Vázquez v. Consejo de Titulares, supra.* La interpretación de la ley es una tarea que le corresponde a los tribunales y como corolario, los tribunales deben revisar las conclusiones de derecho en todos sus aspectos. *Íd.* Ello, como mecanismo interpretativo del Poder Judicial. *Íd.* Ahora bien, lo anterior "no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia." *Otero v. Toyota, supra,* pág. 729. Consecuentemente, cuando un tribunal llega a un resultado distinto al de la agencia, éste debe determinar si la divergencia es a

consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba. *Íd.* Dicho de otro modo, "[e]l tribunal podrá sustituir el criterio de la agencia por el propio solo cuando no pueda hallar una base racional para explicar la decisión administrativa." *Íd.*

No obstante, la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: (1) cuando no está basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación de la ley, y (3) cuando ha mediado una actuación irrazonable o ilegal. Si el tribunal no se encuentra ante alguna de estas situaciones, aunque exista más de una interpretación razonable de los hechos, debe sostener la que seleccionó la agencia encargada. *Otero v. Toyota, supra*, pág. 730. Al ejercer la función revisora, el tribunal está obligado a considerar la especialización y experiencia de la agencia sobre las cuestiones que tuvo ante sí. *Rebollo v. Yiyi Motors, supra*, pág. 78. Por otro lado, el tribunal tiene amplia autonomía para revisar las determinaciones de derecho en todos sus aspectos. *Íd.*, pág. 77.

## C.

El derecho a presentar prueba es, sin lugar a duda, derivado del debido proceso de ley, **a cuyo alcance debe realizarse la función adjudicativa de una agencia administrativa**. J.A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, 5ta ed., San Juan, SITUM, pág. 176. Como es sabido, el debido proceso de ley, reconocido tanto en la Constitución de Puerto Rico como en la de Estados Unidos,[21] es el "derecho de toda persona a tener un proceso justo y con todas las debidas garantías que ofrece la ley, tanto en el ámbito judicial como en el administrativo." *Aut. Puertos v. HEO*, 186 DPR 417, 428 (2012) (citando a *Marrero Caratini v.*

---

[21] *Véanse* Emdas. V y XIV, Const. EE. UU.; Art. II, Sec. 7, Const. PR.

*Rodríguez Rodríguez*, 138 DPR 215, 220 (1995); J.A. Echevarría Vargas, *op. cit.*, pág. 178.

En ese sentido, la LPAU dispone que en todo procedimiento adjudicativo formal, las agencias administrativas deben garantizarles a las partes: (1) el derecho a notificación oportuna de los reclamos en su contra; **(2) derecho a presentar prueba**; (3) derecho a una adjudicación imparcial; y (4) derecho a que la decisión sea basada en el expediente. Sec. 3.1 de la LPAU, 3 LPRA sec. 2151.

Como corolario del derecho a presentar prueba, la Regla 104 (b) de Evidencia, *supra*, establece que quien se perjudique por la exclusión errónea de prueba, deberá utilizar el mecanismo de la oferta prueba. El propósito de dicha figura es que el foro apelativo conozca el contenido de la prueba excluida y, así, pueda evaluar el efecto del error de su exclusión. *Pueblo v. Ortiz Colón*, 207 DPR 100, 115 (2021). Más aun, "tiene el fin de que el tribunal revisor 'pueda determinar si la prueba, de haber sido creída por [el foro] inferior, hubiera justificado un resultado distinto del caso.'" *Íd.* (citando a *Pueblo v. López Rivera*, 102 DPR 359, 368 (1974)).

Específicamente, la Regla 104 (b) de Evidencia, *supra*, indica que:

> En el caso de exclusión errónea de prueba, la parte perjudicada deberá invocar el fundamento específico para la admisibilidad de la evidencia ofrecida y hacer una oferta de prueba de forma que surja claramente cuál es la evidencia que ha sido excluida y la naturaleza, propósito y pertinencia para la cual se ofrece. No será necesario invocar tal fundamento específico ni hacer la oferta de prueba cuando resultan evidentes del contexto del ofrecimiento.
>
> El tribunal permitirá la oferta de prueba y determinará si debe hacerse mediante un resumen de la evidencia ofrecida o el interrogatorio correspondiente. El tribunal podrá añadir cualquier manifestación que demuestre el carácter de la evidencia, la forma en que fue ofrecida, la objeción a su admisión y la resolución sobre la exclusión.

A su vez, las Regla 105 y 106 de Evidencia, *supra*, establecen el estándar de revisión sobre prueba admitida o excluida

erróneamente. En ese sentido, la Regla 105 del referido cuerpo legal

expone que:

> (a) Regla general – No se dejará sin efecto una determinación de admisión o exclusión errónea de evidencia ni se revocará por ello sentencia o decisión alguna a menos que:
>
>> (1) La parte perjudicada con la admisión o exclusión de evidencia hubiere satisfecho los requisitos de objeción, fundamento u oferta de prueba establecidos en la Regla 104, y
>>
>> (2) el tribunal que considera el señalamiento estime que la evidencia admitida o excluida fue un factor decisivo o sustancial en la sentencia emitida o decisión cuya revocación se solicita.
>
> (b) [...]

Asimismo, la Regla 106 de Evidencia, *supra*, permite que los foros apelativos entretengan un señalamiento de error de admisión o exclusión errónea de evidencia y revocar una determinación, aunque la parte perjudicada haya incumplido con los requisitos referidos anteriormente si: (1) el error fue craso en el sentido de que no cabe duda de que fue cometido; (2) fue perjudicial porque tuvo un efecto decisivo en la determinación cuya revocación se solicita; y (3) el no corregirlo resulte en un fracaso de la justicia.

Si bien las Reglas de Evidencia, *supra*, no aplican automáticamente a los procedimientos administrativos, es harto sabido que son de aplicación los principios fundamentales del Derecho probatorio y, en consonancia, las disposiciones relativas a ellos, máxime cuando inciden sobre las garantías procesales mínimas que deben salvaguardarse. Ello pues, "la audiencia administrativa posee todas las características de un juicio." J.A. Echevarría Vargas, *op. cit.*, pág. 219.

Por otro lado, la Sección 3.8 de la LPAU, 3 LPRA sec. 9648, dispone lo siguiente:

> (a) Los procedimientos de descubrimiento de prueba no serán de aplicación a los casos de adjudicación administrativa, a menos que se autoricen en los

reglamentos de procedimiento de adjudicación de la agencia y así lo autorice el funcionario que presida el procedimiento adjudicativo. No obstante lo anteriormente dispuesto, en los reglamentos de las agencias se garantizará a todo querellado el derecho a los mecanismos de descubrimiento de prueba para los casos en que el procedimiento de adjudicación sea promovido a iniciativa de la agencia.

(b) Podrá, además, emitir citaciones para la comparecencia de testigos; órdenes para la producción de documentos, materiales u otros objetos; y órdenes protectoras, conforme a las Reglas de Procedimiento Civil.

(c) En caso de incumplimiento de una orden o requerimiento emitido al amparo del inciso (b) de esta Sección, la agencia podrá presentar una solicitud en auxilio de su jurisdicción en la sala con competencia del Tribunal de Primera Instancia, y éste podrá emitir una orden judicial en la que ordene el cumplimiento de la persona en cuestión bajo apercibimiento de que incurrirá en desacato si no cumple con dicha orden.

Cónsono con lo anterior, el *Reglamento Sobre Asuntos Programáticos de la Oficina de Ética Gubernamental de Puerto Rico*, Reglamento Núm. 8231 de 18 de julio de 2012 (el Reglamento),[22] tiene el propósito de, entre otros, establecer normas claras, objetivas y uniformes en los procedimientos adjudicativos ante la OEG, conforme a las disposiciones de la LPAU.

Particularmente, el Artículo 6.13 del referido Reglamento establece la forma en la que se llevará a cabo la audiencia o vista administrativa ante la OEG. En ese sentido, el aludido articulado indica, pertinentemente, lo siguiente:

El oficial examinador o juez administrativo ofrecerá a las partes el tiempo necesario para una divulgación completa de todos los hechos y cuestiones en discusión. Dará oportunidad a las partes de presentar evidencia, conducir contra-interrogatorios y argumentar. También podrá excluir aquella prueba impertinente, repetitiva o inadmisible por fundamentos constitucionales o legales basados en privilegios evidenciarios reconocidos por los tribunales de Puerto Rico.

Las Reglas de Evidencia de Puerto Rico no serán aplicables en la audiencia, pero los principios fundamentales de evidencia se podrán utilizar para

---

[22] El referido reglamento fue derogado por el *Reglamento Sobre los Procedimientos Operacionales de la Oficina de Ética Gubernamental de Puerto Rico*, Reglamento Núm. 9642 de 7 de enero de 2025. No obstante, dado que los hechos ocurrieron durante su vigencia, haremos referencia al cuerpo legal derogado.

lograr una solución rápida, justa y económica del procedimiento.

**D.**

La Ley de Ética Gubernamental, *supra*, tiene como propósito, entre otros, educar a los servidores públicos para que, al desempeñar sus funciones, exhiban los valores que rigen la administración pública. 3 LPRA sec. 1855. Cónsono con ello, la OEG tiene la facultad de imponer sanciones civiles y penales a aquellos funcionarios públicos que infrinjan las disposiciones de la Ley de Ética Gubernamental. Las multas administrativas podrán ser impuestas hasta un máximo de $20,000.00 por violación. 3 LPRA sec. 1875f.

Pertinente al caso de autos, el Artículo 4.2 de la referida ley, el cual establece las prohibiciones éticas de carácter general, dispone que:

(a) [. . .]

(b) Un servidor público no puede utilizar los deberes y las facultades de su cargo ni la propiedad o los fondos públicos para obtener, directa o indirectamente, para él o para una persona privada o negocio, cualquier beneficio que no esté permitido por ley.

(c) [. . .]

[. . .]

(k) Un servidor público no puede, mientras se encuentra en funciones de su trabajo, dirigir o fomentar actividades que, directa o indirectamente, promuevan los intereses electorales de cualquier partido o candidato público.

(l) [. . .]

(m) Un servidor público no puede, mientras se encuentre en funciones de trabajo, exigir o solicitar a los demás servidores públicos, que hagan contribuciones económicas o que empleen de su tiempo para realizar o participar en una actividad política.

3 LPRA sec. 1857a.

Expuesto el marco jurídico aplicable, procedemos a disponer del asunto ante nuestra consideración.

**III.**

En el presente caso, el señor Berríos Marrero cuestiona la *Resolución* dictada en su contra, y mediante la cual le fue impuesta una multa global de $15,000.00. Argumentó que, la OEG incidió en la comisión de siete (7) errores que conciernen aspectos procesales, cuestiones de derecho y apreciación de la prueba.

De entrada, puntualizamos que, en cuanto al primer error señalado, no le asiste la razón al recurrente al cuestionar el plazo de tiempo transcurrido entre la fecha en que el caso quedó sometido para su adjudicación hasta la fecha en que la agencia notificó su determinación. Ello por cuanto, en primer lugar, el término de seis (6) meses para la adjudicación, establecido en la Sección 3.13 (g) de la LPAU, 3 LPRA sec. 9653, es uno directivo y no de naturaleza jurisdiccional. *J. Exam. Tec. Med. v. Elias et al.*, 144 DPR 483, 494-495. Igualmente, el Tribunal Supremo ha resuelto que la parte perjudicada por el incumplimiento con dicho término debe solicitar al Tribunal de Apelaciones, mediante un recurso de *mandamus*, que ordene a la agencia a resolver el caso sometido. *Íd.*, págs. 495-496.

Por lo tanto, el recurrente no tiene méritos en el primer error señalado.

Asimismo, conviene precisar que el segundo señalamiento de error tampoco se cometió. El señor Berríos Marrero esgrime que la OEG incumplió con los términos prescriptivos establecidos en la Ley de Ética Gubernamental, *supra*, dentro de los cuales la recurrida debe ejercer sus facultades investigativas. En lo pertinente, el Artículo 7.1 del referido estatuto, 3 LPRA sec. 1860, dispone que la la OEG cuenta con noventa (90) días siguientes a la fecha de presentación del planteamiento o la queja, para realizar una investigación preliminar. En adición, una vez culminada la investigación preliminar, de entender que procede una de naturaleza exhaustiva, debe concluirla dentro del término de un año. Igualmente, establece que estos términos son de cumplimiento

estricto y prorrogables, de mediar justa causa, hasta noventa (90) días o un año, respectivamente. Ambos términos, junto con sus respectivas prórrogas, suman un plazo de dos (2) años y seis (6) meses con los que la OEG cuenta para realizar las investigaciones correspondientes con el fin de, en la eventualidad, presentar las querellas que procedan.

Un análisis del expediente en el presente caso refleja que, el 2 de septiembre de 2022, la recurrida recibió el planteamiento que dio paso a la investigación del recurrente y, el 25 de abril de 2023, se presentó la *Querella*. Es decir, transcurrieron, aproximadamente, siete (7) meses desde que se recibió el planteamiento hasta que se presentó la *Querella*. En ese sentido, es forzoso concluir que el proceso investigativo se realizó dentro de los plazos establecidos y, consecuentemente, que no se cometió el segundo error señalado.

Nótese que, atisbamos que la OEG no debe aferrarse a que el término para resolver un caso es uno directivo para extenderse en atender un caso. Ello, toda vez que está en consideración el debido proceso de ley, tal como lo es el del recurrente.

Ahora bien, el quinto señalamiento de error versa sobre la denegatoria de la Oficial Examinadora de permitirle un ofrecimiento de prueba sobre la imparcialidad de la Oficina de Ética Gubernamental durante el proceso de investigación. En ese sentido, sostiene que le fue impedido ofrecer evidencia con la intención de probar que la investigación de la OEG era una parcializada y motivada por cuestiones políticas. Sobre ello, sostiene que la recurrida incidió su derecho a presentar prueba y, así, se le privó de un debido proceso de ley. Le asiste la razón.

La recurrida, por su parte, plantea que las disposiciones sobre oferta de prueba y exclusión errónea de evidencia, contenidas en las Reglas 104, 105 y 106 de Evidencia, *supra*, no son aplicables a las vistas administrativas, de conformidad con la Sección 3.13 (e) de la

LPAU, 3 LPRA sec. 9653. Además, en la alternativa de que apliquen, sostiene que el recurrente incumplió con los requisitos de invocar un fundamento específico, así como la naturaleza, propósito y pertinencia de la prueba, para realizar el ofrecimiento.

En primer lugar, si bien la LPAU establece que las Reglas de Evidencia, *supra*, no son, generalmente, aplicables a los procedimientos administrativos, lo cierto es que las disposiciones relativas a la exclusión errónea de evidencia son consustanciales con el derecho a presentar prueba, expresamente reconocido en todo proceso administrativo de carácter cuasi judicial.

Asimismo, surge de la transcripción que obra ante nos de la audiencia administrativa, celebrada el 10 de julio de 2024, que, efectivamente, el recurrente se disponía a realizar el ofrecimiento de prueba, pero la Oficial Examinadora no se lo permitió. En esa línea, procedemos a citar lo allí sucedido, según obra de la transcripción:

> LCDO. BARON:
> Oficial Examinadora, pues nada, estábamos planteando que en efecto, si nosotros tuviéramos, esperemos que no, verdad, pero si tuviéramos que recurrir a un foro apelativo, el foro va a resolver a base de lo que existe en el expediente y por tal razón, nosotros le estamos haciendo unas preguntas al licenciado para saber si, si sabe o no sabe y tenemos una prueba de impugnación sobre ese aspecto y nosotros quisiéramos hacer un ofrecimiento de prueba en el caso de que no se nos permita presentar la evidencia para que por lo menos en el récord quede claro de que nosotros hubiéramos provisto en el expediente si usted nos hubiera permitido entrar la prueba, eso es todo lo que...
>
> OFICIAL EXAMINADORA:
> ¿Impugnación en contra de quién, licenciado?
>
> LCDO. BARON:
> ¿Perdón?
>
> OFICIAL EXAMINADORA:
> ¿Impugnación en contra de quién?
>
> LCDO BARON:
> Bueno, en contra del conoci... contra la Oficina como tal, nosotros estamos impugnando a la Oficina de Ética Gubernamental, especialmente la división donde laboran las compañeras en cuanto a que tenían conocimiento de un asunto de que nosotros pudimos haber levantado un planteamiento sobre parcialidad y

queremos que, sé que lo hemos levantado, pero, pero tenemos la evidencia para qué, para poder demostrar que se sabía y no nos descubrieron esa evidencia.

OFICIAL EXAMINADORA:
Licenciado, desde un principio usted ha levantado ese argumento, pero con el señor Castro, en todo momento ha sido así, en todo momento. Hoy por primera vez ahora está diciendo que es parcialidad de la Oficina y a...

LCDO. BARON:
Del licenciado, del licenciado.

OFICIAL EXAMINADORA:
Del licenciado, ¿verdad? Entendemos que no es pertinente, el planteamiento de la parcialidad lo presentó, como indiqué, en cuanto, en cuanto al señor Castro y no vemos la pertinencia.

LCDO. BARON:
Pues entonces, solicitamos que se nos permita entonces, hacer el ofrecimiento de prueba de qué hubiéramos presentado para probar entonces, nuestras alegaciones.

OFICIAL EXAMINADORA:
No, licenciado.

LCDO. BARON:
Pero es que es lo que procede, con mucho respeto.

OFICIAL EXAMINADORA:
No se permite. Licenciado, no procede, por eso le estoy diciendo que no.

LCDO. BARON:
Pero es que entonces, el Apelativo, ¿y cómo nosotros podemos levantar este planteamiento en el Apelativo de tener que recurrir, porque si no...

OFICIAL EXAMINADORA:
Bueno, licenciado, usted levantó las defensas desde el día uno que entendió pertinentes, ahora a estas alturas está planteando otras cosas, o sea, usted ha tenido la oportunidad de defender a su cliente y lo ha hecho y está, consta todo en el expediente y lo que ha presentado hasta el momento se ha resuelto. El expediente está claro en eso, no se va a permitir, licenciado.

LCDO. BARON:
Es prueba de impugnación, licenciada, con mucho respeto.

OFICIAL EXAMINADORA:
No, licenciado. Próxima pregun... Llamamos al testigo.

LCDO. BARON:
Sí, pero todavía, licenciada, con mucho, con mucho respeto, le tengo mucho respeto. Por lo menos debe

hacernos dejar constar para récord que hubiéramos presentado una cantidad, es que, es que...

OFICIAL EXAMINADORA:
Licenciado...

LCDO. BARON:
...se nos viola el debido proceso de ley, con mucho respeto, porque no podemos establecer después que en efecto, íbamos a tener una evidencia que era pertinente para la evaluación de este caso. Y nosotros desde, hay numerosos escritos aquí que nosotros solicitamos información y que se admitan cosas sobre López Mercado y siempre se nos deniega esa información. Y de hecho, esta es la primera vez que podemos impugnar al testigo, que, quien nos dice en su propia deposición que el señor López Mercado fue movido por Recursos Humanos, precisamente ahí es que vamos nosotros a impugnar...

OFICIAL EXAMINADORA:
Licenciado...

LCDO. BARON:
... eso solicitamos presentar para récord.

OFICIAL EXAMINADORA:
No se permite, nuestra decisión es final. Vamos a solicitar que se llame al testigo y continúe con las preguntas que le tenga que hacer, pero eso no se va a permitir.[23]

Como puede apreciarse, el señor Berríos Marrero interesaba cuestionar la parcialidad de la OEG durante el proceso investigativo que se llevó en su contra. Inclusive, adujo que la audiencia administrativa era la oportunidad que tenía para establecer su planteamiento.

De hecho, cabe destacar que, en la *Orden Interlocutoria*, mediante la cual la OEG denegó que se le fuera provista al recurrente cierta información solicitada durante el proceso de descubrimiento de prueba. Con ello, se hizo referencia a que, en adición a los fundamentos jurídicos allí esbozados, el señor Berríos Marrero tendría la oportunidad de presentar la evidencia que estimara necesaria para sustentar su teoría del caso. No obstante, precisamente no le fue permitido y, de igual forma, tampoco se le

---

[23] Entrada Núm. 20 del caso TA2025RA00048 en el SUMAC, Transcripción Estipulada, Parte 2, págs. 233-237, líneas 6-25, 1-25, 1-24, 1-25 y 1-7.

permitió hacer el ofrecimiento de la prueba excluida, todo ello en detrimento del debido proceso de ley que le cobijaba.

Por otro lado, la recurrida aduce que la prueba excluida no constituyó un factor decisivo en la determinación del caso. Sostiene que lo anterior con el planteamiento de que era prueba impertinente sobre los hechos esenciales que se le imputaron al recurrente.

De entrada, nótese que el análisis sobre si la exclusión o admisión errónea de evidencia fue un factor sustancial o decisivo en la determinación recurrida parte de la premisa de que, contrario a lo aquí ocurrido, se realizó la oferta de prueba. Asimismo, no compartimos el criterio de la recurrida en cuanto a que la falta de pertinencia subsana el error señalado. Tal como apreciamos, fue la alegada falta de pertinencia el motivo por el cual la Oficial Examinadora erradamente le impidió al señor Berríos Marrero realizar el ofrecimiento de prueba.

Lógicamente, una parte litigiosa realiza una oferta de prueba cuando esta es excluida debido a que, por lo general, la objeción de una parte contraria a que se admita en evidencia. La objeción puede ser, entre otras, por la impertinencia de dicha prueba. Ante este cuadro, fue la alegada falta de pertinencia el motivo por el cual la Oficial Examinadora erradamente le impidió al señor Berríos Marrero el ofrecimiento de prueba.

En ese sentido, no cabe justificar ni obviar la denegatoria de una oferta de prueba porque dicha prueba fuera impertinente, cuando ello es, en primera instancia, la razón que activa la antedicha figura.

Ciertamente, los procesos administrativos cuasi judiciales están circunscritos a la garantía del debido proceso de ley. *Aut. Puertos v. HEO, supra*, pág. 428; J.A. Echevarría Vargas, *op. cit.*, pág. 178. Así lo establece la LPAU, *supra*, al reconocerle a los querellados la notificación oportuna de las causas adjudicativas iniciadas en su

contra, la imparcialidad en el proceso de adjudicación, que dicha adjudicación esté basada en el expediente administrativo, y la oportunidad de presentar prueba a su favor. Sec. 3.1 de la LPAU, 3 LPRA sec. 2151.

En fin, reiteramos que, aunque las Reglas de Evidencia, *supra*, no son de aplicación automática por tratarse de un procedimiento administrativo, el derecho a presentar prueba es consustancial con el debido proceso de ley y está expresamente reconocido por la LPAU, *supra*. Aquellas figuras del ordenamiento jurídico probatorio que inciden sobre el derecho a presentar prueba, como lo son aquellas relativas a la exclusión o admisión errónea de la evidencia, son de igual aplicabilidad.

Como corolario de lo anterior, cuando la figura de la oferta de prueba incida sobre las facultades de este Foro, no nos colocan en posición de descargar nuestras facultades de revisión ante nuestro desconocimiento sobre la prueba excluida. *Pueblo v. Ortiz Colón, supra*, pág. 115; *Pueblo v. López Rivera, supra*, pág. 368.

En virtud de los fundamentos pormenorizados, no discutiremos el restante de los señalamientos de error.

**IV.**

Por los fundamentos expuestos anteriormente, revocamos la *Resolución* y devolvemos el caso para que la OEG celebre una nueva audiencia administrativa en aras de salvaguardar el debido proceso de ley del recurrente.

Notifíquese.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Sánchez Ramos disiente, pues la prueba que el recurrente pretendía "ofrecer" es impertinente y, por tanto, no tiene probabilidad alguna de ser admitida ni de cambiar el resultado de

este caso. Contrario a lo que plantea el recurrente, no tienen pertinencia las creencias políticas supuestamente manifestadas en un momento dado por quien luego, como funcionario de la OEG, firmó la querella que nos ocupa. Adviértase que no se ha alegado que dicho funcionario (Lcdo. López Mercado) haya hecho manifestación alguna en cuanto a los hechos o investigación del caso de referencia, fuera del ámbito del descargue de sus deberes hacia la OEG. A menos que se establezca una novel norma, a los efectos de que solo funcionarios de la OEG que sean de la misma ideología política, o bando partidista, de una persona objeto de investigación pueden participar de la misma, sencillamente la prueba que el recurrente pretende ofrecer es impertinente. Por supuesto, por razones que uno pensaría son obvias, semejante norma no tendría base jurídica racional y, en la práctica, resultaría inmanejable, pues convertiría todo proceso en la OEG en una inquisición de, o una expedición de pesca en cuanto a, las creencias políticas de todos los funcionarios de dicha oficina que hayan participado en una investigación. Lo verdaderamente pertinente aquí es si la OEG probó la conducta imputada al recurrente en un proceso en el que se respetara el derecho fundamental de este a defenderse. En este caso, la prueba sostiene ampliamente la conclusión de la agencia recurrida y el recurrente no demostró que se violara ninguna de las garantías procesales que le asistían, por lo cual procedía la confirmación del dictamen recurrido.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones